14219

PROSSER *ET AL.* v. CAROLINA MUTUAL BENEFIT CORP.

(Two Cases)

(183 S. E., 710)

*Mr. D. M. Winter,* for appellant,

*Mr. G. Badger Baker,* for respondents,

February 7, 1936.

The opinion of the Court was delivered by MR. JUSTICE FISHBURNE.

The plaintiffs are the beneficiaries named in two insurance certificates issued to Nellie Lee by the defendant, Carolina mutual Benefit Corporation, on November 4, 1933.

The certificates were designated as Class B, and denominated as "Thrift Group Club of the Carolina Mutual Benefit Corporation," and were each in the sum of·$1,000.00, pay-

able within 90 days after receipt at the home office of due proof of the death of the insured. Nellie Lee died on May 14, 1934, and it is alleged that at the time of her death the two certificates were in full force and effect; all conditions and requirements thereof having been fully complied with and all monthly contributions having been paid.

Payment having been denied by the Carolina Mutual Benefit Corporation, these two cases were brought to recover damages for the alleged breach of the contracts, in the sum of $1,000.00 each. The two cases are identical with the exception of the number of the certificate, and were tried together, and for the purpose of this appeal will be treated as one case. The issues as to each are the same.

Upon trial in the County Court verdicts were found in favor of the plaintiff in each case, in the sum of $500.00.

The questions involved in the appeal, now brought to this Court, involve principally the construction of the terms and provisions of the membership certificates.

In our discussion of the case we will hereafter refer to only one case and to only one certificate, in the interest of simplification.

The instrument sued on in this case is a certificate of membership in a duly incorporated mutual protective association, only one paragraph of which is before us for construction, and which reads as follows: "A claim fund derived from the monthly contributions for this and all like contracts shall be created by placing not less than sixty-five per cent (65%) of such contributions, except the first three monthly contributions, in such fund, and such entire fund is pledged to the payments of claims arising hereunder, and no extra contributions will ever be demanded unless, and until said fund is entirely exhausted, but is mutually understood and agreed that the Carolina Mutual Benefit Corporation has the right to collect additional monthly contributions to protect this and all like certificates. The obligations of the

Corporation to pay the maximum amount specified in this certificate is conditioned upon said amount being collected from its members. It is especially agreed between the Member and the Corporation that should the total amount of claims approved in any particular month be in excess of the amount in the claim fund, then, and in that event, the total amount in the claim fund shall be distributed to all claims so approved, and each claimant shall be paid his or her proportionate part thereof, which payment shall be in full settlement and discharge of all obligations on the part of the Corporation under this Certificate."

The defendant denied all liability on the certificate, and alleges in its answer·that the amount on hand in the claim fund was inadequate to pay the maximum amount of the certificate, and that the only amount to which the plaintiffs would be entitled is their *pro rata* share of the fund on hand, along with other claimants; there being other claims pending against the funds available for the group to which this certificate belongs. The defendant further alleged that it. is a domestic association, depending entirely upon assessments upon its members for its income, and that by the laws of South Carolina (Chapter 157, Art. 4, § 8079, Civil Code 1932), under which it is organized and operating, a specific remedy is provided for compelling and enforcing the making of assessments against its members, that said remedy is exclusive, and that the plaintiff has no legal right to maintain this action, and is not entitled to recover judgment herein. Upon the call of the case, the defendant moved for a judgment upon the pleadings upon the last ground stated in its answer, which was overruled. Upon the conclusion of all the testimony, the defendant moved for a directed verdict in its favor, upon the ground that the amount of the verdict should be limited to the amount collectible from members holding certificates in the same group to which the insured belonged, from a call for assessments if such call should be made, and, if and when made, subject to that paragraph of

the contract which we have herein quoted. This motion was also overruled.

The exceptions on appeal question the correctness of the County Court's ruling on the two motions referred to.

While it is true that Section 8079 of the Code provides that, if the officers of any such company (Mutual Protective Association) neglect or omit to levy and collect with all practicable diligence any assessment, the Insurance Commissioner may apply to any Court of competent jurisdiction, through the Attorney General, for a mandamus to compel the performance of such neglect or omission, this remedy is not exclusive. This question was settled adversely to the contention of the appellant in the case of *Batson & Walsh v. Ins. Co.,* 78 S. C., 309, 58 S. E., 936. In that case the Court said: "The question presented is whether plaintiffs could maintain an action at law for the said sum as damages for breach of defendant's contract, or was their remedy in equity to compel an assessment? This question has been recently considered in *Thompson v. Piedmont Mutual Ins. Co.* [77 S. C., 486], 58 S. E., 341, and the conclusion reached was that, when an insurance company denies all liability and refuses to make an assessment, an action at law is maintainable to recover the amount of damages to which the insured would be entitled if the company had performed its part of the contract. The Court in that case cites *Bentz v. N. W. Aid Asso.,* 40 Minn., 202, 41 N. W., 1037, 2 L. R. A., 784; *Jackson v. N. W. M. R. Asso.,* 73 Wis., 507, 41 N. W., 708, 2 L. R. A., 786, and *Lawler v. Murphy,* 58 Conn., 294, 20 A., 457, 8 L. R. A., 113, to which may be added *Elkhart Mut. Aid, etc., Association v. Houghton,* 103 Ind., 286, 2 N. E., 763, 53 Am. Rep., 514; *Earnshaw v. Sun Mut. Aid Society,* 68 Md., 465, 12 A., 884, 6 Am. St. Rep., 460; *O'Brien v. Home Ben. Soc.,* 117 N. Y., 310, 22 N. E., 954."

In *Batson & Walsh v. Insurance Company, supra,* the defendant denied all liability on the policy and refused to make

the assessment. It was not disputed that a *pro rata* assessment, if it had been made, would have realized the amount for which judgment was rendered.

The liability of the defendant in the case at bar to pay the full amount of the two judgments rendered in the lower Court depends upon the interpretation put on the paragraph herein referred to, and which was set up in the answer of the defendant. Our construction of this insurance contract and the consideration of the evidence in the record lead us to the conclusion that the lower Court must be affirmed.

As an introduction to the discussion of the next point, it will not be inappropriate to state certain pertinent general rules of construction applicable to life insurance contracts, found in *Deadwyler v. Grand Lodge, Knights of Pythias,* 131 S. C., 335, 126 S. E., 437, where it was held that rules of construction applicable to life insurance contracts generally are applicable to construction of contracts to pay death benefits made by fraternal benefit associations and mutual benefit societies, excepting in so far as those rules must be held to be modified by the peculiar organization, objects, and policies of such societies. It does not appear that there is any peculiarity of organization, object, or policy which would make inapplicable to the contract here involved what has been called "the primary rule that such contracts are to be most strongly construed against the insurer and in favor of the insured." 14 R. C. L., 926, § 103 ; *Sample v. Ins. Co.,* 46 S. C., 491, 24 S. E., 334, 47 L. R. A., 696, 57 Am. St. Rep., 701. Thus, where the language of such a contract may be understood in more senses than one, or where it is doubtful whether given words were used in an enlarged or a restricted sense, other things being equal, that construction should be adopted which is most beneficial to the insured. 45 C. J., 22, § 21. Also see *Livingston v. Union Central Life Ins. Co.,* 120 S. C., 93, 112 S. E., 547, and *Wheeler v. Ins. Co.,* 125 S. C., 320, 118 S. E., 609.

A careful reading of the certificate of membership held by the insured, Nellie Lee, convinces us that, if by its terms a cause of action has· accrued by reason of the death of said member, the plaintiff is entitled to recover the full sum of $1,000.00 mentioned therein, unless the defendant has shown by its pleadings and proofs that the amount which would be realized by "additional monthly contributions" levied against all the certificate holders liable would be insufficient to pay the face value of the certificate; and that provision in the certificate reading, "and no extra contributions will ever be demanded unless, and until said fund is entirely exhausted, but it is mutually understood and agreed that the Carolina Mutual Benefit Corporation has the right to collect additional monthly contributions to protect this and all like certificates," is a condition subsequent, and it is incumbent upon the defendant, in order to avail itself of these provisions, to show the existence of the facts upon which it is to become entitled to the benefit thereof; that the burden is therefore upon the defendant to prove that the amounts realizable from extra or additional monthly contributions from those certificate holders in this group who are liable therefor would have been insufficient to pay the face value of the certificate; and that, unless that fact is shown by the preponderance of the evidence, the amount of the plaintiff's recovery should be the face value of the certificate; and further that, if it is not possible to show what amount would be realized from these additional monthly contributions, or whether or not the full face value of the certificate would have been realized, in case the assessment had been made at the time it should have been made, the plaintiff is entitled to recovery of the full face value of the certificate. *Metropolitan Safety Fund Accident Ass'n v. Windover*, 137 Ill., 417, 27 N. E., 538.

We are not concerned with the full face value of the certificates in the instant case, for the reason that the verdict of the jury shows that only one-half of each certificate was recover-

able. Although it is not set out in the record, we gather from the briefs of the appellant and the respondents that this reduction was due to other provisions of the insurance contract, wherein the amount to be recovered was limited by the age of the policy, the cause of death, and perhaps other reasons.

The agreement of the certificate is, primarily, to pay to the designated beneficiary the full amount of $1,000.00. And the subsequent clauses upon which reliance is placed merely provide that, if the amount contained in the "claim fund" is insufficient to pay that sum, then and in that event the total amount in the claim fund shall be distributed to all approved claims, and each claimant shall be paid his or her proportionate part thereof, which payment shall be in full settlement and discharge of all obligations on the part of the defendant. We deem this proviso to be a mere exception or condition that, under certain circumstances which may or may not arise, the beneficiaries shall accept in discharge of the defendant's obligations a sum less than that agreed to be paid to them.

It should be observed that the certificate contains no express agreement or undertaking on the part of the defendant that, upon the death of a member, additional monthly contributions shall be levied and collected for the purpose of raising a fund to be paid to the beneficiary, and it is doubtful whether such undertaking is so far implied as to be capable of enforcement. That which is provided for is a claim fund, derived from the usual monthly contributions, the pledging of such fund to the payment of claims arising thereunder, and a reservation of the right in the defendant to collect additional monthly contributions. Doubtless the defendant was at liberty, for the purpose of availing itself of this reserved right in its contract, and of liquidating the amount of its liability by that mode, to make extra monthly assessments, or require additional monthly contributions, as they are called, but we are unable to conclude from the terms of the certificate that it was bound to do so.

Furthermore, by reference to the mode of doing business outlined by the certificate, and as shown by the evidence, it is, to say the least, doubtful whether the making of a special or extra assessment upon the death of each member was within the contemplation of the defendant. Instead of that, the contract provides for the payment of regular monthly contributions required to be made by members, 65 per cent. of such contributions to be placed in the claim fund, and the money thus raised was to constitute a treasury fund for the payment of the moneys which might become due to their beneficiaries by the terms of their certificates. So long as there were funds in the "claim fund" resulting from the monthly contributions, sufficient to pay beneficiaries, it is scarcely to be supposed that further assessments were contemplated. If that fund had been exhausted, or should become inadequate, undoubtedly further additional monthly contributions might be levied and collected, but the general plan of doing business would seem to indicate an expectation that the usual monthly contribution fixed and provided for in the certificate would be sufficient to pay all moneys which might become due under the membership certificates.

We are supported in this conclusion by reference to the testimony offered by the defendant. It is undisputed that no extra call or additional monthly contribution had ever been levied or collected from certificate holders for the payment of claims. The testimony is that it was the custom of the defendant to approve and pay an average of one claim per month, and claims so approved would be paid from money in the "claim fund," derived from the regular, unaided monthly payments.

The insured, Nellie Lee, died in May, 1934. Under the terms of the certificate, the amount due on the policy would have become due and payable within ninety days after receipt at the home office of due proofs of death. The evidence of the defendant shows that in May there were 507 certificate holders or members in the group to which the certificate

of Nellie Lee belonged, and there was a like number of certificates in August, ninety days later. The company received from this group in August, 1934, the sum of $856.95, derived from the usual monthly contributions, without the aid of an extra call or additional assessment; 65 per cent. of that amount reduced these figures to $557.01, which under the terms of the certificate would be placed in the claim fund. If an additional contribution of $1.50 each had been levied upon the certificate holders liable in this group for the purpose of protecting the payment of the certificate involved in this case, a like amount would have been received. The testimony so shows. The explanation is made, however, that no additional contribution was called for this purpose because the claim of the plaintiffs had not been approved.

It cannot be doubted, in our opinion, that the proper remedy in the circumstances shown here is an action at law. There is no legal difficulty in the way of making proper proof of damages in that forum. The amount to be recovered is a sum fixed and liquidated by the contract, viz., $1,000.00, subject to reduction by the age of the policy and the cause of death therein referred to, and also in case it develops that additional monthly contributions from all the certificate holders liable would fail to realize the amount due. In such case the amount due would be subject to the reduction by the amount of the deficiency shown. It also follows that the burden of establishing this reduction is on the defendant. The clauses by virtue of which it becomes entitled to them are manifestly inserted in the certificate for its benefit and protection. The plaintiffs by producing the membership certificates in evidence and proving such collateral facts as are sufficient to show that a cause of action has accrued thereon by reason of the death of a member makes out a *prima facie* case of a right to recover the full face value of the certificate; and the burden is on the defendant to show that conditions existed which limit the right to a smaller sum.

148

The testimony introduced by the defendant itself very clearly shows that, if it had exercised its right to levy additional monthly contributions, a sufficient amount would have been realized with which to pay the judgments rendered against it.

A further point raised by the defendant is that under no construction of the certificate could it levy and collect more than one additional monthly contribution. We do not agree with this contention. If it had been intended to limit the additional assessments to only one, it would have been very easy to have so stated in the contract. We agree with the trial Judge that under the terms and provisions of this certificate there is no limit to the number of additional monthly contributions which might be exacted by the defendant from certificate holders. That construction of the contract should be adopted which is most beneficial to the insured, and of course to the beneficiaries of the insured, and we see nothing in the language of this contract upon which the contention can be reasonably made that only one extra monthly assessment might be levied. The defendant has refused to pay, or recognize or make any provision for the payment of, the claims of the plaintiffs as such beneficiaries. The plaintiffs have elected to bring their action in a Court of law for a determination of their rights, and we hold that such action will lie. *Metropolitan Safety Fund Accident Ass'n v. Windover, supra.* See monographic note following the report of the case of *Lake v. Minn. Masonic Relief Ass'n,* 61 Minn., 96, 63 N. W., 261, 52 Am. St. Rep., 538.

All exceptions are overruled.

It is the judgment of this Court that the judgment of the lower Court be, and the same hereby is, affirmed.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES CARTER and BONHAM concur.

MR. JUSTICE BAKER was disqualified.