14387

## WILLIAMS v. HAVERTY FURNITURE COMPANY

(188 S. E., 512)

*Messrs. Murphy & Cain,* for appellant,

*Mr. John W. Crews,* for respondent,

November 30, 1936.

The opinion of the Court was delivered by MR. JUSTICE FISHBURNE.

The plaintiff alleges that she purchased an oil cooking stove from the defendant for $44.50; that the stove was warranted to be worth the purchase price; that the defendant knew that it was to be used for family cooking purposes; that the stove was unfit for such use; that complaint was made to the defendant and a replacement promised; that thereafter the defendant, by fraud, deceit, and misrepresentation obtained possession of the stove, and converted the same to its own use, making no accounting therefor. It is further alleged that the plaintiff would not have parted with the possession of the stove had not the defendant, its agents and servants, promised to make satisfactory adjustment by delivering to her a new stove in place and in lieu of the one she had purchased, which said new stove was to be satisfactory in every respect and mechanically perfect in its parts and operation.

This action for damages was instituted upon the ground that in repossessing the stove the defendant's representations in regard thereto were false and untrue; that plaintiff relied thereon, and that such representations were made to cheat and defraud her out of her property.

The defendant denied the material allegations of the complaint. and upon trial the jury returned a verdict for $7.00,

actual damages, and $700.00, punitive damages, in favor of the plaintiff.

The defendant offered no testimony, but upon the conclusion of the plaintiff's testimony made an unsuccessful motion for a directed verdict in its favor, upon the ground that there was no evidence which would justify the infliction of punitive damages. This appeal is taken from the refusal to grant the directed verdict, and the issue is whether or not the record discloses a scintilla of relevant and competent evidence which would warrant submitting the case for punitive damages to the jury for its determination.

The testimony on behalf of the plaintiff shows that she had been a customer of the defendant for some years; that on May 4, 1935, she bought the oil cooking stove, and in connection with the transaction was allowed a credit of $5.00 on her old stove. In the contract of purchase she agreed to pay the unpaid balance in installments of $1.00 each week. After using the new stove for about three weeks it began to sputter and give off explosive noises, due to the fact that the oil was fed to the burners too freely. When Mr. Hinson, the collector for the defendant, called at the home of the plaintiff for the payment of the weekly installments she complained of the stove, informed him of its defective operation, and he told her that as she had been a good customer she would receive a new stove by the following Monday, and that he would not collect any further installments until the stove was fixed or replaced.

The plaintiff then called up the defendant's place of business on the telephone, and had a conversation with Mr. Cooper, the defendant's credit manager, and told him of the trouble the stove was giving, and that Mr. Hinson, the collector, had promised her a new stove. Mr. Cooper advised her that Mr. Hinson had no authority to make any such promise, and stated to her unequivocally that the defendant could not replace the stove, but would be glad to adjust the one she had. In this conversation the plaintiff told Mr.

Cooper that she did not want the stove she had; that she was afraid to use it. Within a few days thereafter the defendant sent two of its employees to the plaintiff's home to get the stove, and she inquired of them, "Where is the new one?" They told her that they knew nothing about that; that they were merely sent to get the stove she had. As she was in the midst of cooking dinner and would be inconvenienced by having the stove removed at that time, these two employees told her that they would not take it; she replied, "If they sent you for it, take it." She said that their manner was entirely respectful and considerate; that she allowed the stove to be taken because she was under the impression that she was to get another stove in its place from the defendant. This occurred on a Saturday. On the day it was taken she called Mr. Cooper again, for an explanation, and he came to her home, stated that there was some misunderstanding, and offered to send her another stove over the week-end, which offer was not accepted by the plaintiff. She purchased another stove on the same day from another dealer.

It is upon this testimony that the plaintiff bases her action for fraud and deceit, and it was upon this testimony that a verdict of $700.00 was rendered against the defendant for punitive damages.

It was stated in *Halsey v. Minnesota-South Carolina Land & Timber Company,* 174 S. C., 97, 177 S. E., 29, 37, 100 A. L. R., 1: "To constitute actionable fraud, it must appear: (1) That defendant made a material representation; (2) that it was false; (3) that when he made it he knew it was false, or made it recklessly, without any knowledge of its truth and as a positive assertion; (4) that he made it with the intention that it should be acted upon by plaintiff; (5) that plaintiff acted in reliance upon it; and (6) that he thereby suffered injury."

It thus appears that, in order to maintain an action for false representation, it must be shown that the representations were fraudulently made, with intent

to deceive the person to whom they were made, and with the intent to induce him to act upon them; that the plaintiff must show that he relied upon the representations made to him by the defendant, and that he was deceived thereby, and that damage has been sustained by reason of his reliance upon the representations.

It seems very clear from a careful examination of the testimony that the plaintiff has failed to bring himself within these rules of law governing fraud and deceit. She did not rely upon the promise made by Hinson, the collector, that she would be given a new stove, but she called up the defendant, and she was in that conversation definitely informed by Mr. Cooper, the credit manager, that the defendant would not replace the stove, but would adjust it, and it was in this conversation that the plaintiff advised the defendant that she did not want the stove she had, and did not wish to have it adjusted. And it was following this conversation that the defendant sent to her home for the stove.

When the employees arrived to get the stove they were plainly told by her to take it. Having thus surrendered the possession, and not only acquiesced in, but actually consented to the taking of the stove, it is now too late to treat the defendant as a wrongdoer. The testimony discloses no false statement or fraudulent representation made by the defendant. The plaintiff was clearly told, as was stated by her that she would not be given a new stove, so that it is difficult, if not impossible, to see how she could have concluded that a new stove was to be given to her.

The doctrine announced in an early English case still holds true. that "fraud without damage or damage without fraud is not actionable." *Baily v. Merrell,* 3 Bulst., 94, 26 C. J., 1064.

If the action be viewed as one for conversion we do not see how that can aid the plaintiff. In *Young v. Corbitt Motor Truck Company,* 148 S. C., 511, 146 S. E., 534, 542,

this definition of conversion is given: "Conversion may arise either by a wrongful taking of the chattel or by some other illegal assumption of ownership, by illegally using or misusing it, or by wrongful detention."

In the case of *Holliday v. Poston,* 60 S. C., 103, 109, 38 S. E., 449, 451, it is said: "Perhaps more accurately defined by another writer thus: 'A conversion seems to consist of any tortious act by which the defendant deprives the plaintiff of his goods, either wholly or but for a time. Any act of the defendant inconsistent with the plaintiff's right of possession, or subversive of his right of property, is a conversion.' "

However, it is equally true that "to constitute conversion, non-consent to the possession and disposition of the property by the defendant is indispensable. If the owner expressly or impliedly assents to or ratifies the taking, use, or disposition of his property, he cannot recover as to a conversion thereof." 65 C. J., §5.

As already shown, the plaintiff gave her positive consent to the taking of the stove by the defendant's agents, and she did so after having been told by the defendant that no new stove would be furnished. This occasions no basis, under the evidence, for an action for conversion. It may be that the circumstances of the case, viewed from the standpoint of the plaintiff, were aggravating, and gave rise to considerable irritation, but we cannot make fraud and deceit or conversion out of the evidence upon any reasonable hypothesis, as a basis for punitive damages.

The motion for a directed verdict should have been granted as to punitive damages, and upon this ground the judgment of the County Court is reversed.

MR. CHIEF JUSTICE STABLER and MESSRS. JUSTICES CARTER, BONHAM and BAKER concur.